UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| K. PETROLEUM, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:22-CV-116-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| LARRY MILLS, ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Larry Mills's Motion to Dismiss pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). [R. 14]. Plaintiff K. Petroleum, Inc. responded in opposition [R. 15], and Mills replied [R. 16]. On the Court's order [R. 44], the parties also filed supplemental briefs [R. 49]; [R. 52]. For the reasons set forth below, the Court will deny Mills's motion and retain jurisdiction over this case.

### I.  BACKGROUND

This action arises out of Plaintiff K. Petroleum's operation of certain oil and gas wells and pipelines on property located in Clay County, Kentucky. [R. 1, ¶ 7]. It appears the property is currently owned by Mtn. View, Inc. and Paul Michael Ison (and previously owned by Ison and the Estate of Roy Campbell, et al.),[1] and in August of 2021, Viking Resources, LLC, agreed to purchase a portion of the property via installment land contract. *See* [R. 14-1 (Land Contract)]. During a telephonic status conference held October 12, 2023, *see* [R. 41], counsel for Defendant

---

[1] The land contract lists the owners of the subject property, which is comprised of two parcels, as Mtn View, Inc., a Kentucky Corporation, and Paul Michael Ison. [R. 14-1 (Land Contract), p. 1]. In describing the two parcels, the contract further provides that Parcel 1 was conveyed to Mtn View, Inc. from the "Estate of Roy Campbell, et al.," and Parcel 2 was conveyed to Paul Michael Ison "from Joe Prewitt and Gina Prewitt, husband and wife." *Id.*

- 1 -

Mills informed the Court that Mills pays Viking Resources' obligation under the contract in exchange for logging rights on the property. For its part, K. Petroleum claims it previously obtained the right to operate natural gas and oil wells, pipelines, and other equipment on the property through an Operating Agreement with an "affiliated company," E-ZAD Energy Corporation. [R. 1, ¶ 7]. K. Petroleum therefore asserts it "is the licensed operator of those wells." *Id.*

In its Complaint, K. Petroleum alleges that Mills "has or has attempted to wrongfully oust Plaintiff, K. Petroleum, Inc., and its employees from the property on which [its] wells, pipelines, and equipment are located." *Id.* at ¶ 9(a). K. Petroleum further alleges that Mills "has prevented [it] from operating and servicing [] those wells, pipelines, and equipment," and that Mills has "illegally converted to his own use natural gas not owned by him," "illegally and dangerously otherwise tampered with [K. Petroleum's] wells, pipelines, and equipment, including by means of making illegal, unauthorized, dangerous connections for purposes of illegally taking and converting natural gas or oil," and damaged "or attempted to knowingly and willfully damage or destroy those gas and oil pipelines which are part of an interstate gas pipeline facility used in interstate commerce and in activities affecting interstate and foreign commerce, in violation of 49 U.S.C. § 60123(b)." *Id.* at ¶¶ 9(b)–(e).

In 2019, three years prior to K. Petroleum's initiation of this lawsuit and two years prior to when Viking Resources and Mills obtained any interest in the subject land via the land contract, then landowner plaintiffs June C. Ison, Paul Michael Ison, and the Estate of Roy Campbell sued K. Petroleum in Clay County Circuit Court and sought to permanently enjoin it from entering the same subject property. *See Estate of Roy Campbell, et al. vs. K. Petroleum, Inc.*, Case No. 19-CI-00121. The landowner plaintiffs alleged that K. Petroleum "trespassed on [the] land for the purpose of extracting oil and gas without a lease, assignment of lease, or other lawful authority to do so."

[R. 14-1 (Clay County Motion for Summary Judgment), p. 2]. In that case, K. Petroleum asserted counterclaims against the landowner plaintiffs based on the following allegations:

> 1. Defendant, K. Petroleum, Inc., has obtained by agreement with E-ZAD Energy Corporation, the right to produce oil and gas and an interest otherwise in the mineral estate of certain property located in Clay County, Kentucky, in which the Plaintiffs appear to own an interest, and, pursuant to that authority has for decades operated natural gas and oil production equipment an pipelines, producing natural gas and oil.
>
> 2. Defendant, K. Petroleum, Inc., operates the subject natural gas and oil production equipment and pipelines with consent of, at the instruction of, and for its holding company, E-ZAD Energy Corporation, which has the same owner, officer, and director.
>
> . . .
>
> 9. Plaintiffs [are] liable to Defendant, K. Petroleum, Inc., for the following:
>
>> a. Plaintiffs without right and illegally otherwise, have wrongfully ousted Defendant, K. Petroleum, Inc., and its employees from the property on which the natural gas and oil production equipment and pipelines are located, causing damages to Defendant, K. Petroleum, Inc., in excess of the minimum jurisdictional limits of this court;
>>
>> b. Plaintiffs have prevented Defendant, K. Petroleum, Inc., from operating and servicing the subject natural gas and oil production equipment and pipelines, causing damages to Defendant, K. Petroleum, Inc., in excess of the minimum jurisdictional limits of this Court;
>>
>> c. Plaintiffs have illegally converted to their own use natural gas and oil not owned by them, causing damages to Defendant, K. Petroleum, Inc., in excess of the minimum jurisdictional limits of this Court[.]

[R. 14-7 (Clay County Amended Answer and Counterclaim), pp. 7–10]. In the state action, the parties have exchanged discovery and engaged in motion practice, and K. Petroleum's Motion for Summary Judgment is currently pending before the Clay Circuit Court. *See* [R. 15-7 (Summary Judgment Motion)].

In light of the related state court action, Defendant Mills has filed a Motion to Dismiss [R. 14], urging this Court to abstain from exercising its jurisdiction under *Colorado River* because K.

- 3 -

Petroleum's claims "are premised upon an assertion of rights and property interests" which "are the very heart of the State Court Action pending in the Clay Circuit Court, and the very same allegations asserted by [K. Petroleum] against Mills in this action have already been asserted by [K. Petroleum] by counterclaim in that state action." [R. 14, pp. 8–9]. Mills argues, therefore, that K. Petroleum "should not assert those claims in piecemeal fashion in separate forums, with the consequent risks of inconsistent adjudication." *Id.* at 9. In response, K. Petroleum notes the "exceptional" nature of the *Colorado River* abstention doctrine and urges it should not apply in this case. [R. 15, p. 1]. In his reply, Mills reiterates his position that the *Colorado River* factors "overwhelmingly weigh[] in favor of abstention in this case." [R. 16, p. 1].

The Court held a telephonic conference on October 12, 2023, to discuss the Motion to Dismiss and a now-resolved Motion for Preliminary Injunction [R. 29]. *See* [R. 41]. Thereafter, based on the discussion with the parties during the conference, the Court ordered additional briefing on the narrow issue of "whether abstention is appropriate when the state court action will not address a claim or claims pending in the federal action against a non-party to the state court action." [R. 44, p. 2].

In his supplemental brief, Mills maintains that the actions are parallel even though he is not a party to the state court action, and even though the state action will not (and could not) address K. Petroleum's claims for property damage against Mills in this case. [R. 49, p. 3]. Mills reasons that, "[i]f the leasehold is found not to exist by the state court, then the equipment on the land that was included as part of that leasehold will not have been KPI's, and they will have no claim against Mills for property damage, conversion, etc, because they would not have the standing to raise that claim." *Id.* K. Petroleum disagrees, however, and argues that an adverse ruling by the Clay Circuit Court concerning its leasehold would not preclude recovery against Mills for damage

to the equipment—which belongs to K. Petroleum—on the property. [R. 52, p. 12]. This, according to K. Petroleum, is evidenced by the state court's previous acknowledgement that the equipment belonged to K. Petroleum when it granted K. Petroleum a Temporary Restraining Order allowing it "access to Plaintiff's property in order to maintain natural gas and oil production and associated safety measures and operate all its equipment on the subject property." *Id.* (citing [R. 15-3 (Clay Circuit Court TRO)]).

## II. ANALYSIS

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Generally speaking, parallel proceedings in state court do not detract from this "unflagging obligation." *Id.* Indeed, the Court's "jurisdiction, when it applies, normally is peremptory." *Nationwide Mut. Ins. Co. v. Knott Cnty. Water & Sewer Dist.*, 600 F. Supp. 3d 710, 712 (E.D. Ky. 2022). Nevertheless, "considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (discussing *Colorado River*). In other words, despite its obligation to exercise jurisdiction, a federal district court has some discretion to stay or dismiss a case under certain circumstances, such as where there exists a related and ongoing state court lawsuit. These principles are embodied in the *Colorado River* abstention doctrine. This doctrine allows a federal district court to stay a lawsuit if there is a substantially similar parallel state court proceeding underway and the federal litigation would be duplicative or unwise. *See Colo. River*, 424 U.S. at 817; *Bates v. Van Buren Twp.*, 122 F. App'x 803, 809 (6th Cir. 2004).

"The *Colorado River* abstention doctrine recognizes that for a federal court 'and the state court to focus simultaneously on the same issue would be a waste of limited judicial resources.'" *Walker v. Cedar Fair, L.P.*, 520 F. Supp. 3d 925, 929 (N.D. Ohio 2021) (quoting *Red Roof Inns, Inc. v. sorryA.C. Furniture Co.*, No. 2:10-CV-525, 2012 WL 628541, at *6 (S.D. Ohio)). "Simultaneous litigation is especially unnecessary and wasteful when the state court litigation is sufficiently advanced that it likely will reach a final judgment in time to preclude further litigation of the same issues in the federal action." *Id.* (citations omitted).

Even so, application of this doctrine "is appropriate only when: (1) the state and federal proceedings are parallel and (2) *Colorado River*'s eight factors weigh in favor of abstention." *Novak v. Federspiel*, No. 21-1722, 2022 WL 3046973, at *2 (6th Cir. Aug. 2, 2022) (citing *Romine*, 160 F.3d at 340–41). Those factors are:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation . . . (4) the order in which jurisdiction was obtained . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Walker v. Louisville/Jefferson Cnty. Metro Gov't*, 583 F. Supp. 3d 887, 899 (W.D. Ky. 2022) (citing *Romine*, 160 F.3d at 340–41). "No one factor is necessarily determinative," *Colo. River*, 424 U.S. at 818, and the factors "do not comprise a mechanical checklist," *Romine*, 160 F.3d at 341. Rather, the Court must apply the factors "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983).

If these criteria are satisfied, the district court may stay, rather than dismiss, the federal proceeding pending resolution of the state matter. *See Bates*, 122 F. App'x at 809 ("We conclude

that a stay is the best way to effectuate *Colorado River* abstention. . . . We therefore join other circuits in requiring a stay of proceedings rather than a dismissal in *Colorado River* abstention cases."). Notwithstanding, "extraordinary circumstances" must exist to warrant abstention under the *Colorado River* doctrine. *See generally Colo. River*, 424 U.S. at 813 (explaining that abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it").

### A. Parallelism

As stated, the threshold issue is whether the state and federal proceedings are parallel. *See Novak*, 2022 WL 3046973, at *2; *Romine*, 160 F.3d at 339 (citing *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28 (6th Cir. 1984)) ("Before the *Colorado River* doctrine can be applied, the district court must first determine that the concurrent state and federal actions are actually parallel."). To be considered parallel, the actions must involve "substantially the same parties contemporaneously litigating substantially the same issues, and the critical question is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Seyi-Am., Inc. v. Stamtec, Inc.*, No. 3-13-0461, 2013 WL 6096794, at *3 (M.D. Tenn. 2013) (cleaned up) (citations omitted); *see also Minette v. Minette*, 162 F. Supp. 3d 643, 654 (S.D. Ohio 2016) (citing *Romine*, 160 F.3d at 339–40) (explaining the *Colorado River* abstention doctrine "applies when there are parallel actions in federal and state court, such that the two actions involve substantially the same parties litigating substantially the same issues"). "Full identicality is not required, but the state and federal cases must involve substantial duplication of parties and interests." *Nationwide*, 600 F. Supp. 3d at 712.

K. Petroleum contends the actions are not parallel because (1) Defendant Mills is not a party to the state court action, and (1) because resolution of the state action would not resolve all

of K. Petroleum's claims against Mills before this Court. [R. 15, pp. 3–4]. Mills counters that "[t]he presence of additional parties or additional claims will not necessarily preclude a finding that the actions are parallel," and suggests "the Court would be requiring the exact parallelism of claims that *Romine* says is not necessary" if it finds that parallelism is lacking here. [R. 49, p. 1] (citing *Szabo v. CGU Int'l Ins.*, 199 F. Supp. 2d 715, 719 (S.D Ohio Feb. 19, 2002); *Degeeter v. McNeill*, No. 07-2512-Ml/P, 2007 U.S. Dist. LEXIS 105812 at *10 (W.D. Tenn. Sept. 21, 2007)).

First, while Mills is correct that "it is not necessary that the parties be identical" for purposes of *Colorado River* abstention, *see Bates*, 122 Fed. Appx. at 806, as stated, there must be "*substantial duplication* of parties and interests." *Nationwide*, 600 F. Supp. 3d at 712 (emphasis added). Here, K. Petroleum is the only common party to both lawsuits, and Mills points the Court to no authority that suggests a single party's presence in two separate lawsuits—particularly where that party brought only the federal action and is defending the state action—constitutes "substantial duplication" of parties. In fact, courts have found the opposite to be true. *See, e.g.*, *Crawley*, 744 F.2d at 31 (finding actions were not parallel in part because "the parties . . . [we]re different" and, more specifically, "[t]he defendants in [the state case were] Cincinnati officials" and those in the federal case were "officials of Hamilton County"); *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 603 (W.D. Tenn. 2011) (cleaned up) ("[T]here is no overlap between the defendants in the State Court Action and the defendants in the action before this Court. The City is the sole defendant in the State Court Action. Linebarger is the sole defendant in this action. . . . Therefore, that Linebarger is the only defendant in this action and the City is the only defendant in the State Court Action suggests that the two proceedings are not parallel."); *Seyi-Am*, 2013 WL 6096794, at *3 ("Here, there is indeed a substantial doubt that the California action will

offer a complete resolution between the parties, most fundamentally because Stamtec is not sued in the California case, and the causes of action are different.").

But even assuming K. Petroleum's presence in both actions is sufficient, for actions to be parallel, there must also be "substantial duplication of . . . interests." *Id.*; *see also Kopacz v. Hopkinsville Surface and Storm Water Utility*, 714 F.Supp.2d 682, 688 (W.D. Ky. 2010) ("Although the parties are nearly identical and the cases arise from largely the same facts, these cases are not parallel since there are claims that will not be decided by the state court."). Because Mills is not a party to the state action, there is serious doubt as to whether K. Petroleum could get complete relief from the state court sufficient to resolve all its claims against Mills in this Court. *See Moses H. Cone*, 103 S. Ct. at 943 (explaining that the examining court must "conclude[] that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," and "[i]f there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all").

Importantly, here, it appears the facts that give rise to K. Petroleum's claims against the landowner plaintiffs in the Clay Circuit action are separate and distinct from those that give rise to K. Petroleum's claims against Mills before this Court. The landowner plaintiffs have sought to oust K. Petroleum from the subject property at least since 2019, when they initiated the Clay Circuit action against K. Petroleum, but the record reflects that the first time Mills "would not allow [K. Petroleum] access to the property" was on August 27, 2021, the same month Viking Resources executed its installment land contract with the landowners. *See* [R. 14-5, Ex. E (Clay Circuit Court Affidavit of Jam Khorrami), p. 2]. Interestingly, however, K. Petroleum filed its counterclaims against the landowner plaintiffs one month *after* Mills allegedly ousted it from the subject property, on September 29, 2021. *See* [R. 14-7 (Clay County Amended Answer and

Counterclaim)]. Therefore, at most, it is unclear whether the facts that give rise to the respective ouster claims are based on the same event(s). And "[a]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction[.]" *Chellman-Shelton v. Glenn*, 197 F. App'x 392, 394 (6th Cir. 2006). But even if the ouster claims were based on common facts, "[t]wo actions are not parallel merely because they arise out of the same basic facts." *Wright*, 782 F. Supp. 2d at 603. Rather, "it is the claims and issues which must be parallel[.]" *Cf. Iron Workers of W. Penn. Pension Plan v. Caremark RX, Inc.*, No. 3:06–1097, 2007 WL 60927, at *3 (M.D. Tenn. Jan. 5, 2007).

Of course, the claims and issues in the Clay Circuit action and this federal action do have some clear similarities. Both cases involve the same subject property, in which Mills (and, in the state action, other parties) asserts ownership or possessory rights and K. Petroleum asserts a right to extract oil, gas, and minerals. Relatedly, whether K. Petroleum validly obtained those mineral rights is an issue central to both actions, and that question is presently before the Clay Circuit Court by virtue of K. Petroleum's Motion for Summary Judgment. *See* [R. 15-7]. During the October 12, 2023, telephonic conference, counsel for K. Petroleum acknowledged that its claims in this federal action that Mills "wrongfully oust[ed]" it from the subject property would necessarily fail if the Clay Circuit Court were to determine K. Petroleum did not have a valid leasehold on the property. Likewise, K. Petroleum's claims in this federal action that Mills is wrongfully keeping it "from the property on which [its] wells, pipelines, and equipment are located" and preventing K. Petroleum "from operating and servicing [] those wells, pipelines, and equipment," would be defeated by a ruling from the Clay Circuit Court that its leasehold is invalid and, consequently, that it has no rights in the subject property. Thus, those claims could, in theory, be resolved by the Clay Circuit Court's resolution of the parties' dispute over K. Petroleum's

drilling and mineral rights. Put differently, if the state court determined K. Petroleum did not have any lawful contract rights with respect to the subject property, its claims of wrongful ouster against Mills before this Court would fail. At the same time, of course, if the Clay Circuit Court ruled in favor of K. Petroleum on these issues, its ouster claims against Mills would remain before this Court and be unresolved by the state court action, in which Mills is not a party.

Along the same lines, in its Complaint before this Court, K. Petroleum asserts a conversion claim against Mills—that Mills "illegally converted to his own use natural gas not owned by him" and "illegally and dangerously otherwise tampered with [K. Petroleum's] wells, pipelines, and equipment, including by means of making illegal, unauthorized, dangerous connections for purposes of illegally taking and converting natural gas or oil." [R. 1, ¶ 9]. K. Petroleum asserted a nearly identical counterclaim against the landowner plaintiffs (not Mills) in the state action, *see* [R. 14-7 (Clay County Amended Answer and Counterclaim), pp. 7–10] ("Plaintiffs have illegally converted to their own use natural gas and oil not owned by them, causing damages to Defendant, K. Petroleum, Inc., in excess of the minimum jurisdictional limits of this Court[.]"). And in its supplemental brief, K. Petroleum concedes that "[a]n unfavorable resolution of the state court claims might preclude [K. Petroleum] from recovering natural gas conversion damages against Mills[.]" [R. 52, p. 12]. Again, the conversion claim in this case, theoretically, could be resolved by an adverse ruling from the Clay Circuit Court with respect to K. Petroleum's leasehold, but it could also be left for disposition by this Court if the Clay Circuit Court finds that K. Petroleum has a valid leasehold on the subject property, since Mills is not a party in the state court action.

Moreover, the *potential* applicability of any ruling by the Clay Circuit Court to this federal action stops there. "Cases are not considered parallel if there is an issue that would not be resolved by the state court upon the completion of the state court action." *Kopacz*, 714 F. Supp. 2d at 688;

*see also Wright*, 782 F. Supp. 2d at 603 ("If a state court action and a federal action are truly parallel, resolution of the state court action will also resolve all issues in the federal action."). At a minimum, K. Petroleum's additional claim that Mills damaged "or attempted to knowingly and willfully damage or destroy those gas and oil pipelines which are part of an interstate gas pipeline facility used in interstate commerce and in activities affecting interstate and foreign commerce, in violation of 49 U.S.C. § 60123(b)," [R. 1, ¶¶ 9(b)–(e)], is unique to this action and could not be resolved by the Clay Circuit Court. And although Mills notes that 49 U.S.C. § 60123(b) is a criminal enforcement statute for violations of The Natural Gas Pipeline Safety Act ("NGPSA"), which only creates a private right of action for a party seeking injunctive relief, [R. 16, p. 2], Mills's conduct, as alleged by K. Petroleum, nevertheless presents a claim unique to this federal action.

Although, in his supplemental brief, Mills argues that an adverse finding by the Clay Circuit Court concerning K. Petroleum's leasehold would moot K. Petroleum's claims for property damage, *see* [R. 49, p. 3], K. Petroleum has presented argument and evidence indicating that Mills is mistaken. K. Petroleum states:

> The Master Commissioner (and then Montfort) conveyed at least the three existing wells, i.e., wellbores, which would include the appurtenances necessary to continue producing the wells (e.g., pumps, tanks, manifolds and meters, gathering lines, equipment damaged by Mills), essentially everything that the former operator would have installed pertinent to the lease. The Master Commissioner Assignment conveys the lease and the wells on this property, by name and permit number. (Exhibit A, Reply Exhibit 3, at 19.) Section C on page 1 of the Assignment from Montfort includes language of this typical type, including "wellhead equipment, fixtures . . . ., pipe, casing, and tubing; . . . pipeline equipment and facilities; . . . all other personal property of any similar nature used in production operations . . . ." (Exhibit A, Reply Exhibit 2, at 1.)
>
> Whether the leasehold itself transferred (which is the only question raised in that regard in the state court action) is only relevant to further development of the leasehold, but would not curtail producing the existing wells, which are still

> protected under the original lease that allowed the wells to be drilled, until such time that they no longer produce in paying quantities.

[R. 52, pp. 11–12]. Moreover, K. Petroleum notes that the Clay Circuit Court, in granting K. Petroleum a temporary injunction that allows it access to the subject property through the pendency of the state action, recognized K. Petroleum's interest in the equipment at issue. *See* [R. 15-3 (Clay Circuit Court TRO)]. Of course, at this stage, the Court is simply evaluating K. Petroleum's claims to determine whether abstention is appropriate, and it will not make findings concerning the validity or scope of the leasehold(s) or K. Petroleum's ownership interest in the equipment at this time. Nevertheless, the Court acknowledges that K. Petroleum's position is supported by evidence in the record, while Mills, for his part, baldly asserts his belief that "[i]f the leasehold is found not to exist by the state court, then the equipment on the land that was included as part of that leasehold will not have been [K. Petroleum's]" without any citations to the record, case law, or supportive exhibits.

Importantly, in his supplemental brief, Mills appears to acknowledge that if "an issue would be left unresolved regardless of how the state court ruled on a particular issue," or, in other words, if "it ultimately would not matter one way or the other how the state court ruled, [and] the federal court would always have some work left to do on the case," [R. 49, p. 3], then actions are not parallel for purposes of *Colorado River* abstention. And although Mills argues that is not the case here because he believes K. Petroleum's ownership interest in its equipment is contingent upon the validity of its mineral leasehold, for the reasons just stated, the evidence presented by K. Petroleum suggests Mills is mistaken.

Having thoroughly considered the claims at issue in the Clay Circuit Court action and this federal action, the Court finds that K. Petroleum has brought at least one claim against Mills before this Court that would be left wholly unresolved by the state court's resolution of all claims in that

matter.[2] The Court finds, therefore, that the actions are not parallel. *See Cedar Fair*, 520 F. Supp. 3d at 930 (concluding actions were not parallel where "three Ohio common-law claims . . . for breach of contract, unjust enrichment, and money had and received [were] virtually identical" in state and federal actions but "five statutory claims [were] unique to" federal action).

Mills has cited no authority in his motion or supplemental brief that would lead the Court to a different conclusion. First, Mills relies on *Lattanzio v. Brunacini*, No. CV 5:16-171-DCR, 2016 WL 7177610, at *4 (E.D. Ky. Dec. 8, 2016). There, a court in this district found that actions were parallel and that the *Colorado River* factors favored abstention, but *Lattanzio* is distinguishable procedurally and substantively. *Id.* In *Lattanzio*, a single plaintiff filed one suit in state court against numerous, alleged joint tortfeasors before filing a second case in federal court against the final alleged joint tortfeasor. *Id.* The cases largely involved the same claims and arose out of the same set of facts, as evidenced by the fact that the plaintiff alleged a conspiracy among the defendants named in the state and federal actions. *Id.* The court acknowledged that *Colorado River*'s application is narrow; however, it reasoned that "where the same plaintiff attempts to litigate *the same issues* in separate fora, abstention may be appropriate. *Id.* (citations omitted) (emphasis added). Of course, that is simply not the case here. K. Petroleum did not bring the initial state court action, although it did assert counterclaims against the state court plaintiffs, only some of which are similar in nature to its claims against Mills in the present action. *See* [R. 14-7 (K. Petroleum's Amended Answer and Counterclaim in Clay Circuit Court)]. Neither the Clay Circuit Court action nor this federal action include joint tortfeasor or conspiracy claims, and this action includes claims and issues not raised in the state court action that are premised on different facts.

---

[2] During the telephonic status conference held October 11, 2023 [R. 41], counsel for Mills acknowledged this point, conceding that even if the Clay Circuit Court found against K. Petroleum in the state action, that finding would leave at least one of K. Petroleum's claims in this action unresolved.

Crucially, as mentioned, Mills is not among the plaintiffs in the state action, which was initiated two years before Mills obtained an interest in the subject property, and he was not named in K. Petroleum's counterclaim. These crucial differences render *Lattanzio* distinguishable. K. Petroleum properly brought this action against Mills in federal court, and he was not required to join Mills in the state action or pursue its claims against him there. *See Nationwide*, 600 F. Supp. 3d at 713 ("Nationwide presses its claim only in federal court. Neither its loss nor its interest pends or has protection in the state forum. Although Nationwide *could* have gone to Knott Circuit Court, it also had the right to invoke diversity and litigate federally.") (emphasis in original).

In his supplemental brief, Mills also relies on *Shehan v. Turner Constr. Co.*, No. CV 18-14-DLB-CJS, 2019 WL 1320046 (E.D. Ky. Mar. 22, 2019).[3] There, another court in this district found abstention under *Colorado River* appropriate with respect to the plaintiff's claim against one defendant, Turner Construction, in a multi-defendant case because Turner Construction had "initiated a parallel action in New York state court" against the federal plaintiff. *Id.* at *15, *2. The court acknowledged that "[w]hile the parties are not identical," they "'overlap in the federal and state court action' in that they each involve [the federal court plaintiff] and [the federal court defendant]." *Id.* at *12. Mills conveniently ignores this finding and focuses, instead, on the court's subsequent determination that because the plaintiff's claims against Turner Construction were also "predicated on the same material facts and the parties are substantially similar, the actions are parallel." *Id.* Of course, here, the parties to the state action and this federal action do not "overlap;"

---

[3] Mills also recites the black letter law concerning parallelism from *Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998) and *Szabo v. CGU Int'l Ins.*, 199 F. Supp. 2d 715 (S.D Ohio Feb. 19, 2002) but makes no attempt to connect that law to the facts of this case. "It is insufficient 'for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). The Court acknowledges the law generally applicable to the *Colorado River* abstention doctrine and has, in this memorandum opinion, itself cited to *Romine*. *See supra* p. 5. But because Mills has failed to make any effort at formal development with respect to these cases and their direct relevance to the facts of this case, the Court declines to discuss them further.

rather, as previously stated, K. Petroleum is the only common party among the two cases. Moreover, here, while the issue of K. Petroleum's leasehold rights may be common to both cases, the facts that give rise to K. Petroleum's claim against Mills for property damage are separate and distinct from any facts alleged in the Clay Circuit action and occurred nearly three years after that action was initiated. As with *Lattanzio*, the facts of *Shehan* render its holding distinguishable.

Again, for purposes of *Colorado River* abstention, this Court must "conclude[] that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," and "[i]f there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone*, 103 S. Ct. at 943. And, indeed, the Court has substantial doubt that the Clay Circuit Court can resolve all the issues between Mills and K. Petroleum. Thus, the actions are not parallel.

### B. *Colorado River* Factors

Even assuming the actions were parallel, the *Colorado River* factors do not favor abstention. *See Hunt v. Bank of Am., N.A.*, No. 5:18-CV-175-TBR, 2019 WL 3109854, at *4 (W.D. Ky. July 15, 2019) (assuming, arguendo, that the proceedings were parallel, weighing the *Colorado River* factors, and refusing to abstain); *see also Nationwide*, 600 F. Supp. 3d at 713 ("Although the lack of parallelism concludes the analysis, the *Romine* factors also point toward retention, not abstention. They certainly do not clearly signal justification to abstain.").

On the first factor, whether the state court has assumed jurisdiction over any res or property, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), K. Petroleum concedes that "[t]he matters of record in the state court action clearly show that the state court has assumed jurisdiction over title to the subject property and minerals as claimed by the parties," but suggests the state court has not assumed jurisdiction over "the claims against Mills." [R. 15, p. 7]. Still, this

factor weighs in favor of abstention since the state court has assumed jurisdiction over the property at issue in both actions.

Second, considering whether the federal forum is less convenient to the parties, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), K. Petroleum agrees that "[t]he forums are equally convenient," [R. 15, p. 7]. Mills suggests the state forum "is marginally more convenient than the federal forum" because Mills "is a home county resident where the state action is venued," but he acknowledges "that the geographic inconvenience to the federal courthouse in London is minor." [R. 16, p. 6]. This factor, therefore, is neutral.

On the third factor, avoidance of piecemeal litigation, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), K. Petroleum argues "[r]esolution of the claims against Mills in this Court will not result in piecemeal litigation," although it acknowledges "[t]here is some potential risk of incongruous findings as to the mineral estate on the subject property." [R. 15, p. 8]. Courts have considered the risk of piecemeal litigation "the most important factor [] to consider[.]" *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l*, 556 F.3d 459, 467 (6th Cir. 2009) (quoting *Colorado River*, 424 U.S. at 819). As discussed above with respect to parallelism, even after the state action resolves, at least one of K. Petroleum's claims (namely, its claim for property damage against Mills) in this federal action will remain. And, again, Mills is not a party to the state action, and the conduct that gave rise to K. Petroleum's claims against him is separate and distinct from that against the landowner plaintiffs in the state action. Moreover, "although there is some lack of efficiency in having two fora examine the same originating event" (here, the parties' respective rights with respect to the subject property) this fact "does not threaten the type of piecemeal litigation the *Colorado River* Court recognized—thus, there is not competing

or potentially incongruous litigation concerning one resource." *Nationwide*, 600 F. Supp. 3d at 713–14. This factor, therefore, weighs against abstention.

The fourth factor, the order in which jurisdiction was obtained, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), does not clearly counsel in favor of abstention because Mills is not a party to the Clay Circuit Court action. K. Petroleum correctly observes that the state court has never assumed jurisdiction over Defendant Mills or over specific claims at issue in the federal action, although it concedes that the state court "did, of course, first exercise jurisdiction as to the leasehold rights." [R. 15, p. 10]. Mills contends "[t]his factor weighs in favor of abstention because the state court obtained its jurisdiction first over subject matter that unavoidably intertwines these defendants, these claims, and these cases together." [R. 16, p. 8]. The Court disagrees, however, and does not find that this factor favors abstention.

Next considering the fifth factor, whether the source of governing law is state or federal, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), the Court notes that most, if not all, of K. Petroleum's claims in this action are governed by state law. K. Petroleum concedes that state law controls some of its claims, but it relies on its claims under 49 U.S.C. § 60123(b) to position that "the presence of a federal question in a case weighs heavily against abstention." [R. 15, pp. 10–11]. As discussed above, however, Mills has pointed out that this criminal enforcement statute may not create a private right of action for K. Petroleum in this context. Accordingly, this factor weighs in favor of abstention.

Sixth, the adequacy of the state court action to protect the federal plaintiff's rights, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), weighs heavily against abstention. Because, as discussed above, the state court action will not afford complete relief to K. Petroleum with respect to its claims against Mills, the state court cannot sufficiently protect its rights with

respect to those claims. *See Nationwide*, 600 F. Supp. 3d at 713 ("Critically, to the Court, the state action will not, as postured, capably protect Nationwide's interest. Though it is true that Nationwide *could* litigate at the state level, it has validly chosen federal court."). This factor therefore weighs against abstention.[4]

On the seventh factor, the relative progress of the state and federal proceedings, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), K. Petroleum notes "the state court action is essentially complete," as the parties await a ruling on K. Petroleum's summary judgment motion and will proceed to trial if the motion is denied. [R. 15, p. 11]. Mills agrees, stating, "There is no controversy regarding the fact that the state court proceedings are well-advanced." [R. 16, p. 11]. Still, K. Petroleum fears "[a]bstention would require [it] to seek to join Mills as third party defendant and essentially start from scratch as to the claims asserted in this federal action, in a state court action that is nearly complete." *Id.* at 12. Again, for the reasons discussed above, the Court agrees. As stated, the Clay Circuit Court's resolution of the action before it would not provide K. Petroleum complete (if any) relief against Mills, since he is not a party to that action. Thus, although the state action is much further along than this federal action, this factor does not favor abstention because the Clay Circuit Court has not (and could not have) considered many of the issues and claims relevant to this federal action.

Considering the eighth and final factor, the presence or absence of concurrent jurisdiction, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), the parties agree that concurrent jurisdiction exists, *see* [R. 15, p. 12]; [R. 16, p. 11], which arguably counsels in favor of abstention. *See GGNSC Frankfort, LLC v. Moore*, No. 3:17-CV-00045-GFVT, 2017 WL

---

[4] The Court notes, however, that K. Petroleum argues the state court is an inadequate forum, "especially considering the relative progress of the cases," and points to the fact that its motion for summary judgment has been pending before the state court for more than two years. [R. 15, p. 11]. But this argument goes more to the seventh factor (relative progress), and not adequacy of the state court action.

2805147, at *3 (E.D. Ky. June 28, 2017) ("[F]ederal courts are more likely to abstain under *Colorado River* where concurrent jurisdiction exists[.]").

In sum, the federal and state actions are not parallel, and only three of the eight *Colorado River* factors arguably favor abstention, which "signal[s] no clear warrant to abstain." *Nationwide*, 600 F. Supp. 3d at 714. This case is not among the "narrowly limited 'special circumstances'" in which to invoke the *Colorado River* abstention under the "clearest of justifications." *Mason*, 842 F.3d at 394 (citations omitted). The Court will decline to abstain from deciding this case.

### III. CONCLUSION

For the reasons set forth above, the Court will deny Defendant Mills's Motion to Dismiss and retain jurisdiction of this case.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Defendant Larry Mills's Motion to Dismiss [**R. 14**] is **DENIED**.

This the 11th day of December, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY